**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **AMIR YOUSSEFF and GRACE GARZA-LAURELES,**<br>**Individually and on behalf of all others similarly situated,**<br><br>***Plaintiffs*,**<br><br>**v.**<br><br>**LAB LOGISTICS LLC,**<br><br>***Defendant*.** | § | **Civil Action No. 4:26-cv-40108-MRG**<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**CLASS ACTION PURSUANT TO FED. R. CIV. P. 23** |

**FIRST AMENDED COLLECTIVE/CLASS ACTION COMPLAINT**

Plaintiffs—Amir Yousseff and Grace Garza-Laureles—bring this action individually and on behalf of all current and former Drivers (collectively, "Plaintiffs and the Putative Collective/Class Members") who worked for Defendant—Lab Logistics LLC ("Lab Logistics")—and were paid a day rate but no overtime, at any time from three years preceding the filing of the Original Complaint through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201—19, unpaid compensation, treble damages, and attorneys' fees and costs pursuant to the Massachusetts Minimum Fair Wage Law ("Massachusetts Overtime Statute"), MASS. GEN. LAWS ANN. Ch. 151, § 1–22, and unpaid overtime, liquidated damages, penalty fees, and attorneys' fees and costs pursuant to Colorado Wage Claim Act, C.R.S. §§ 8-4-101–127 ("CWCA"); the Colorado Wage Rules and Regulations, 7 Colo. Code Regs. § 1103-1.1–1.8 ("CWRR") (the CWCA and CWRR are collectively referred to as the "Colorado Acts").

# I.
# OVERVIEW

1. This is a collective action to recover overtime wages, liquidated damages, and other applicable penalties brought pursuant to the FLSA, and class actions pursuant to the state laws of Massachusetts and Colorado under Federal Rule of Civil Procedure 23(b)(3) to recover overtime wages, liquidated damages, and other applicable penalties.

2. Plaintiffs and the Putative Collective/Class Members are those current and former Drivers who worked for Lab Logistics, anywhere in the United States, at any time from April 13, 2023, through the final disposition of this matter, and were paid a day rate for each day worked, but did not receive overtime for hours worked over forty (40) in each workweek.

3. Although Plaintiffs and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiffs and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. During the relevant time period, Lab Logistics knowingly and deliberately failed to compensate Plaintiffs and the Putative Collective/Class Members overtime compensation for all hours worked in excess of forty (40) hours each workweek.

5. Specifically, Lab Logistics' regular practice—including during weeks when Plaintiffs and the Putative Collective/Class Members worked and recorded hours in excess of forty (40)—was (and is) to misclassify Plaintiffs and the Putative Collective/Class Members as independent contractors and to pay them a day rate but no overtime for hours worked in excess of forty (40) hours.

6. The effect of Lab Logistics' practices were (and are) that it failed to properly compensate Plaintiffs and the Putative Collective/Class Members for all hours worked in excess of forty(40) hours at the rates required by the FLSA, the Massachusetts Acts, and the Colorado Acts.

7. Plaintiffs and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA, the Massachusetts Acts, or the Colorado Acts.

8. Plaintiffs and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid overtime, liquidated damages, and other damages owed under the Massachusetts Acts and the Colorado Acts as class actions pursuant to FED. R. CIV. P. 23.

9. Plaintiffs pray that all similarly situated workers (FLSA Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10. Plaintiffs also pray that the Rule 23 classes are certified as defined herein, and that Plaintiffs are named as the Class Representatives.

## II.
## THE PARTIES

11. Plaintiff—Amir Yousseff ("Yousseff")—worked for Lab Logistics in Massachusetts within the relevant time period. Plaintiff Yousseff did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12. Plaintiff—Grace Garza-Laureles ("Garza-Laureles")—worked for Lab Logistics in Colorado within the relevant time period. Plaintiff Garza-Laureles did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

---

[1] The written consent of Amir Yousseff is on file at ECF No. 1-1.

[2] The written consent of Grace Garza-Laureles is on file at ECF No. 1-2.

13. The FLSA Collective Members are those current and former Drivers who worked for Lab Logistics, anywhere in the United States, at any time since April 13, 2023, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

14. The Massachusetts Class Members are those current and former Drivers who worked for Lab Logistics, in the State of Massachusetts, at any time from April 13, 2023, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Yousseff worked and was paid.

15. The Colorado Class Members are those current and former Drivers who worked for Lab Logistics, in the State of Colorado, at any time from April 13, 2023, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Garza-Laureles worked and was paid.

16. Lab Logistics LLC is a foreign limited liability company, licensed to and doing business in Massachusetts, and has been served and appeared herein.

## III.
## JURISDICTION & VENUE

17. This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201—19.

18. This Court has supplemental jurisdiction over the additional state law claims pursuant to 29 U.S.C. § 1367.

19. Plaintiffs have not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

20. This Court has specific personal jurisdiction over Lab Logistics because the cause of action arose within this District as a result of Lab Logistics' conduct within this District.

21. Venue is proper pursuant to 28 U.S.C. § 1391 in the District of Massachusetts because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

22. Specifically, Plaintiff Youssef worked for Lab Logistics in Boston, Massachusetts, which is located within this District and Division.

## IV.
## BACKGROUND FACTS

23. Lab Logistics is a specialized medical delivery service focused on the secure, compliant, and timely transportation of biological specimens, laboratory samples, pharmaceuticals, and medical supplies between doctors' offices, clinics, hospitals, and laboratories throughout the United States.[3]

### Plaintiffs and the Putative Collective/Class Members are Similarly Situated

24. To provide their services, Lab Logistics employed numerous workers who were paid a day rate only and no overtime—including Plaintiffs and the individuals that make up the putative collective and classes.

25. Plaintiffs and the Putative Collective/Class Members were employed by Lab Logistics as Drivers who were (mis)classified as independent contractors and paid a day rate but no overtime.

26. Plaintiffs and the Putative Collective/Class Members were responsible for the collection, transportation, and delivery of biological specimens, laboratory samples, pharmaceuticals, and medical supplies on behalf of Lab Logistics' customers throughout the United States.

27. While exact job titles may differ, these non-exempt employees were subjected to the same or similar illegal pay practices for similar work in the medical delivery field.

[3] https://www.lablogistics.com/.

28. Importantly, none of the FLSA exemptions relieving a covered employer (such as Lab Logistics) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiffs or the Putative Collective/Class Members.

29. Plaintiff Yousseff worked for Lab Logistics as a Driver in Massachusetts from approximately July 2021 until February 2026.

30. Plaintiff Garza-Laureles worked for Lab Logistics as a Driver in Colorado from approximately September 2025 until February 2026.

31. Lab Logistics paid Plaintiffs and the Putative Collective/Class Members a day rate for each day worked. That is, Plaintiffs and the Putative Collective/Class Members did not get paid if they did not work.

32. During their respective employment with Lab Logistics, Plaintiffs and the Putative Collective/Class Members typically worked five (5) to six (6) days a week, and approximately nine (9) to ten (10) hours per day.

33. Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Lab Logistics resulting in the complained of FLSA, Massachusetts Acts and Colorado Acts violations.

34. Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their job duties – that is, they all collected, transported, and delivered biological specimens, laboratory samples, and medical devices on behalf of Lab Logistics' customers.

35. Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their pay structure – that is, they are (or were) all paid on a day rate basis and were not paid overtime for hours worked in excess of forty (40) each workweek.

36. Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to Lab Logistics' policies (and practices) resulting in the complained of FLSA, Massachusetts Acts and Colorado Acts violations.

**Plaintiffs and the Putative Collective/Class Members Transported Goods in Interstate Commerce**

37. Plaintiffs and the Putative Collective/Class Members transported goods in interstate commerce and provided last mile delivery services to the respective labs and offices on their routes.

38. Specifically, Plaintiffs and the Putative Collective/Class Members transported medical supplies and/or prescription medication on a regular, if not daily, basis.

39. The medical supplies included gloves, collection cups, bags, masks, tubes, and other goods associated with the collection of medical specimens.

40. The medical supplies delivered by Plaintiffs originated outside of Plaintiffs' home states in interstate commerce and remained in their original packaging-in unopened shipping boxes-prior to delivery by Plaintiffs and the Putative Collective/Class Members to their final destination.

41. The prescription medication included medication manufactured and shipped from outside of Plaintiffs' home states and was either a) specifically prescribed to individuals or was b) provided in bulk to certain facilities to distribute to patients on an "as needed" basis. The prescription medication remained at all times in its original packaging.

42. Plaintiffs and the Putative Collective/Class Members' transportation of medical supplies and prescription medications constituted an unbroken and continuous interstate supply chain.

43. Plaintiffs and the Putative Collective/Class Members play a direct, necessary, and active role in the interstate movement of goods as last-mile delivery drivers, even if they never crossed state lines or interacted with an out-of-state vehicle.

44. However, Plaintiffs and the Putative Collective/Class Members **did** cross state lines in making Lab Logistics deliveries and could be reasonably expected to do so in the future.

**Plaintiffs and the Putative Collective/Class Members are Employees**

45. Lab Logistics (mis)classified Plaintiffs and the Putative Collective/Class Members as independent contractors and denied them overtime compensation for all hours worked in excess of forty (40) each workweek.

46. Based on the schedules set by Lab Logistics, Plaintiffs and the Putative Collective/Class Members worked more than forty (40) hours nearly every (if not every) workweek that they performed services for Lab Logistics.

47. Plaintiffs and the Putative Collective/Class Members were employees (and not independent contractors) of Lab Logistics, as they were not in business for themselves and were economically dependent on Lab Logistics.

48. Plaintiffs and the Putative Collective/Class Members conducted their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by Lab Logistics and/or their clients.

49. Specifically, Lab Logistics created the work assignments and chose which work assignments that Plaintiffs and the Putative Collective/Class Members would perform each day.

50. Lab Logistics assigned routes and deliveries to Plaintiffs and the Putative Collective/Class Members at will.

51. Lab Logistics dictated how each pick-up and delivery was to be performed by the Plaintiffs and the Putative Collective/Class Members.

52. Lab Logistics chose which pick-ups and deliveries that Plaintiffs and the Putative Collective/Class Members were to handle each day.

53. Lab Logistics could (and did) change the priority of which tasks Plaintiffs and the Putative Collective/Class Members were to work on at any time by changing their assigned pick-ups and deliveries.

54. Plaintiffs and the Putative Collective/Class Members were prohibited from varying their job duties outside of the predetermined parameters set by Lab Logistics.

55. Specifically, Plaintiffs and the Putative Collective/Class Members were directed as to what tasks to work on each day and were not allowed to prioritize projects on their own.

56. Plaintiffs and the Putative Collective/Class Members were required by Lab Logistics to wear a Lab Logistics uniform.

57. Lab Logistics provided specific guidelines as to how Plaintiffs and the Putative Collective/Class Members would perform their pick-up and deliveries, including what equipment to use, how to store lab specimens, and how to interact with Lab Logistics' customers.

58. Moreover, Plaintiffs and the Putative Collective/Class Members' job functions were primarily routine in nature, requiring little to no official training, much less a college education or other advanced degree.

59. The work performed by Plaintiffs and the Putative Collective/Class Members was integral to Lab Logistics' business.

60. Specifically, Plaintiffs and the Putative Collective/Class Members provided the primary service that Lab Logistics offered and sold to their clients.

61. Lab Logistics determined the hours (and days) that Plaintiffs and the Putative Collective/Class Members worked each week.

62. Specifically, Lab Logistics determined which days that Plaintiffs and the Putative Collective/Class Members would be assigned their respective pick-ups and deliveries.

63. Lab Logistics also set the time of the first pickup for each day.

64. Lab Logistics typically required Plaintiffs and the Putative Collective/Class Members to work at least five (5) days and forty-five (45) hours each workweek.

65. Lab Logistics set Plaintiffs and the Putative Collective/Class Members' pay (day rate and no overtime) and controlled the number of days and hours they worked on a weekly basis.

66. Plaintiffs and the Putative Collective/Class Members' earnings were completely controlled by Lab Logistics.

67. Lab Logistics altered daily work schedules at will.

68. Lab Logistics set all employment-related policies applicable to Plaintiffs and the Putative Collective/Class Members.

69. Lab Logistics maintained control over pricing and marketing for the services provided to their clients.

70. Lab Logistics owned or controlled most (if not all) of the tools, equipment, and supplies that Plaintiffs and the Putative Collective/Class Members used to perform their work for Lab Logistics and/or their clients.

71. Lab Logistics had the power to (and did) hire and fire Plaintiffs and the Putative Collective/Class Members.

72. Lab Logistics made all personnel and payroll decisions with respect to Plaintiffs and the Putative Collective/Class Members, including but not limited to, the decision to pay Plaintiffs and the Putative Collective/Class Members a day rate with no overtime pay.

73. Plaintiffs and the Putative Collective/Class Members did not employ their own workers.

74. Plaintiffs and the Putative Collective/Class Members worked continuously and exclusively for Lab Logistics on a permanent full-time basis.

75. Lab Logistics, instead of Plaintiffs and the Putative Collective/Class Members, made the large capital investments in marketing, sales, leases, buildings, equipment, tools, and supplies.

76. Plaintiffs and the Putative Collective/Class Members relied exclusively on Lab Logistics for their work.

77. Plaintiffs and the Putative Collective/Class Members did not market any business or services of their own.

78. Instead, Plaintiffs and the Putative Collective/Class Members worked the days and hours assigned by Lab Logistics, performed duties assigned by Lab Logistics, worked on projects assigned by Lab Logistics, and worked for the benefit of Lab Logistics and their customers.

79. Plaintiffs and the Putative Collective/Class Members did not earn a profit based on any business investment of their own.

80. Rather, Plaintiffs and the Putative Collective/Class Members' only earning opportunity was their pre-determined day rate which was set by Lab Logistics and not subject to negotiation.

81. Nor did Plaintiffs and the Putative Collective/Class Members bear any risk of loss associated with their work.

82. Lab Logistics improperly classified Plaintiffs and the Putative Collective/Class Members as independent contractors.

83. The classification was improper because Plaintiffs and the Putative Collective/Class Members were not in business for themselves.

84. Instead, they were economically dependent upon Lab Logistics for their work.

85. The FLSA, the Massachusetts Acts, and the Colorado Acts mandate that overtime be paid at one and one-half times an employee's regular rate of pay.

86. Plaintiffs and the Putative Collective/Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

87. Specifically, Plaintiffs and the Putative Collective/Class Members regularly worked in excess of forty-five (45) hours each workweek.

88. Lab Logistics applied this pay practice despite clear and controlling law that states that Plaintiffs and the Putative Collective/Class Members were Lab Logistics' employees, and not independent contractors.

89. As a result of Lab Logistics' misclassification of Plaintiffs and the Putative Collective/Class Members as independent contractors, Plaintiffs and the Putative Collective/Class Members worked overtime hours for which they were not compensated at the rates required by the FLSA, the Massachusetts Acts, and the Colorado Acts.

90. When Plaintiffs and the Putative Collective/Class Members worked five (5) or more nine-hour shifts in a week, they were not paid for five (5) hours of compensable overtime work.

91. For example, in Plaintiff Youssef's last full week of employment with Lab Logistics, he worked approximately forty-five (45) hours. As a result of Lab Logistics' misclassification, Plaintiff Youssef was not paid for five (5) hours of overtime that week.

92. As further example, in Plaintiff Garza-Laureles' second to last week of employment with Lab Logistics, she worked approximately forty-eight (48) hours. As a result of Lab Logistics' misclassification, Plaintiff Garza-Laureles was not paid for eight (8) hours of overtime that week.

93. Lab Logistics knew or should have known they were not (and are not) compensating Plaintiffs and the Putative Collective/Class Members for the proper amount of overtime compensation in violation of the FLSA, the Massachusetts Acts, and the Colorado Acts.

94. Lab Logistics' actions therefore constitute willful violations under the law and were not made in good faith.

95. Lab Logistics' failure to pay Plaintiffs and the Putative Collective/Class Members overtime compensation at a rate of one and one-half times their regular rates of pay violated (and continues to violate) the FLSA, the Massachusetts Acts, and the Colorado Acts.

96. Lab Logistics knew or should have known they were not (and are not) compensating Plaintiffs and the Putative Collective/Class Members for the proper amount of overtime compensation in violation of the FLSA, the Massachusetts Acts, and the Colorado Acts.

97. Lab Logistics knew or should have known their failure to pay overtime to Plaintiffs and the Putative Collective/Class Members would cause, did cause, and continues to cause financial injury, to Plaintiffs and the Putative Collective/Class Members.

98. Because Lab Logistics did not pay Plaintiffs and the Putative Collective/Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Lab Logistics' pay policies and practices willfully violated (and continue to violate) the FLSA, the Massachusetts Acts, and the Colorado Acts.

99. Plaintiffs and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid overtime, liquidated damages, and statutory penalties pursuant to the Massachusetts Acts and Colorado Acts as class actions pursuant to FED. R. CIV. P. 23.

## V.
## CAUSES OF ACTION

### <u>COUNT ONE</u>
### (Collective Action Alleging FLSA Violations)

### A. FLSA COVERAGE

100. All previous paragraphs are incorporated as though fully set forth herein.

101. The "FLSA Collective" and "FLSA Collective Members" are defined as:

**ALL CURRENT AND FORMER DRIVERS WHO WORKED FOR LAB LOGISTICS LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM APRIL 13, 2023, THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND WERE PAID A DAY RATE BUT DID NOT RECEIVE OVERTIME ("FLSA Collective Members").**

102. At all material times, Lab Logistics has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

103. At all material times, Lab Logistics has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

104. At all material times, Lab Logistics has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had, and has, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

105. Specifically, Lab Logistics employed (and continues to employ) hundreds (if not thousands) of non-exempt employees to provide medical specimen delivery services throughout the United States, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

106. During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Lab Logistics, these individuals provided services for Lab Logistics that involved interstate commerce for purposes of the FLSA.

107. In performing work for Lab Logistics, Plaintiffs and the FLSA Collective Members were (and continue to be) engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

108. Specifically, Plaintiffs and the FLSA Collective Members are (or were), non-exempt employees who assisted Lab Logistics' customers throughout the United States by picking up and delivering medical specimens. 29 U.S.C. § 203(j).

109. The proposed collective of similarly situated employees—that is, the FLSA Collective sought to be certified pursuant to 29 U.S.C. § 216(b) is defined in Paragraph 101.

110. The precise size and identity of the FLSA Collective should be ascertainable from the business records, tax records, and/or employee or personnel records of Lab Logistics.

## B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA

111. Lab Logistics violated provisions of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

112. Moreover, Lab Logistics knowingly, willfully and in reckless disregard carried out their illegal pattern of failing to pay Plaintiffs and other similarly situated employees overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

113. Lab Logistics knew or should have known their pay practices were in violation of the FLSA.

114. Lab Logistics is a sophisticated party and employer, and therefore knew (or should have known) their policies were in violation of the FLSA.

115. Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted Lab Logistics to pay overtime in accordance with the law.

116. The decision and practice by Lab Logistics to not pay Plaintiffs and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful and not reasonable or in good faith.

117. Accordingly, Plaintiffs and the FLSA Collective Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. FLSA COLLECTIVE ACTION ALLEGATIONS

118. All previous paragraphs are incorporated as though fully set forth herein.

119. Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this action collectively on behalf of Lab Logistics' employees who are (or were) similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

120. Other similarly situated employees have been victimized by Lab Logistics' patterns, practices, and policies, which are in willful violation of the FLSA.

121. The FLSA Collective is defined in Paragraph 101.

122. Lab Logistics' failure to pay any overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual FLSA Collective Members.

123. Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

124. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

125. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

126. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

127. Absent a collective action, many members of the proposed FLSA Collective likely will not obtain redress of their injuries and Lab Logistics will retain the proceeds of their rampant violations.

128. Moreover, individual litigation would be unduly burdensome to the judicial system.

129. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the FLSA Collective and provide for judicial consistency.

130. Accordingly, the FLSA Collective of similarly situated individuals should be certified as defined as in Paragraph 101 and notice should be promptly sent.

## COUNT TWO
## (Class Action Alleging Violations of the Massachusetts Acts)

### A. MASSACHUSETTS OVERTIME STATUTE COVERAGE

131. All previous paragraphs are incorporated as though fully set forth herein.

132. The Massachusetts Class is defined as:

**ALL CURRENT AND FORMER DRIVERS WHO WORKED FOR LAB LOGISTICS LLC, ANYWHERE IN THE STATE OF MASSACHUSETTS, AT ANY TIME FROM APRIL 13, 2023, THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND WERE PAID A DAY RATE BUT DID NOT RECEIVE OVERTIME ("Massachusetts Class Members").**

133. At all material times, Plaintiff Yousseff and the Massachusetts Class Members have been employees within the meaning of the Massachusetts law. Mass. GEN. LAWS ANN. Ch. 149 § 1.

134. Plaintiff Yousseff and the Massachusetts Class Members were or have been employed by Lab Logistics since April 13, 2023, and have been covered employees entitled to the protections of the Massachusetts Overtime Statute, and were not exempt from the protections of the Massachusetts Overtime Statute.

### B. FAILURE TO PAY OVERTIME WAGES IN ACCORDANCE WITH THE MASSACHUSETTS OVERTIME STATUTE

135. All previous paragraphs are incorporated as though fully set forth herein.

136. The Massachusetts Overtime Statute requires that employees, including Plaintiff Yousseff and the Massachusetts Class Members, receive "time and one-half" overtime premium compensation for hours worked over forty (40) per week. MASS. GEN. LAWS ANN. Ch 151, § 1A.

137. Plaintiff Yousseff and the Massachusetts Class Members worked more than forty (40) hours in workweeks during times relevant to this case, however, Lab Logistics violated the Massachusetts Overtime Statute by failing to pay Plaintiff Yousseff and other Massachusetts Class Members the correct amount of overtime at the rates required by the Massachusetts Acts for hours worked over forty (40) per week.

138. Plaintiff Yousseff and the Massachusetts Class Members have suffered damages and continue to suffer damages as a result of Lab Logistics' acts or omissions as described herein; though Lab Logistics is in possession and control of necessary documents and information from which Plaintiff Yousseff would be able to precisely calculate damages

139. Lab Logistics is liable for treble the value of the unpaid overtime wages, and all costs and reasonable attorney's fees. *See* MASS. GEN. LAWS ANN. Ch. 151, § 1B;

140. The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Massachusetts Acts, is defined in Paragraph 132.

141. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Lab Logistics.

## C. MASSACHUSETTS CLASS ACTION ALLEGATIONS

142. Plaintiff Yousseff and the Massachusetts Class Members bring their Massachusetts Acts claims as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Lab Logistics to work in Massachusetts since April 13, 2023.

143. Class action treatment of Plaintiff Yousseff and the Massachusetts Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

144. The number of Massachusetts Class Members is so numerous that joinder of all class members is impracticable.

145. On information and belief, Lab Logistics has employed hundreds (if not thousands) of Drivers in Massachusetts—Massachusetts Class Members—since April 13, 2023.

146. Plaintiff Yousseff's Massachusetts state-law claims share common questions of law and fact with the claims of the Massachusetts Class Members.

147. Specifically, the common questions of law and fact are that Lab Logistics violated the Massachusetts Acts by failing to pay the Massachusetts Class Members overtime at a rate not less than one- and one-half times their regular rate of pay.

148. Plaintiff Yousseff is a member of the Massachusetts Class, his claims are typical of the claims of other Massachusetts Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other Massachusetts Class Members.

149. Plaintiff Yousseff and his counsel will fairly and adequately represent the Massachusetts Class Members and their interests.

150. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact (as identified herein) predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the Massachusetts Class should be certified as defined in Paragraph 132.

151. Specifically, Plaintiff Yousseff and the Massachusetts Class Members all performed similar work, and were not paid overtime compensation for all hours worked in excess of forty (40) each workweek.

**COUNT THREE**
**(Class Action Alleging Violations of the Colorado Acts)**

## A. COLORADO ACTS COVERAGE

152. All previous paragraphs are incorporated as though fully set forth herein.

153. The Colorado Class is defined as:

> **ALL CURRENT AND FORMER DRIVERS WHO WORKED FOR LAB LOGISTICS LLC, ANYWHERE IN THE STATE OF COLORADO, AT ANY TIME FROM APRIL 13, 2023, THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND WERE PAID A DAY RATE BUT DID NOT RECEIVE OVERTIME ("Colorado Class Members").**

154. At all material times, Lab Logistics has been an "employer" as defined by the Colorado Acts. C.R.S. § 8-4-101(6).

155. At all material times, Plaintiff Garza-Laureles and the Colorado Class Members were Lab Logistics' "employees" as defined within the Colorado Acts. C.R.S. § 8-4-101(5).

156. Lab Logistics—the "employer"—is not exempt from paying wages and overtime benefits under the Colorado Acts.

## B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE COLORADO ACTS

157. All previous paragraphs are incorporated as though fully set forth herein.

158. Lab Logistics owes Plaintiff Garza-Laureles and the Colorado Class Members "wages," as defined in the Colorado Acts, to compensate them for labor rendered to Lab Logistics. *See* C.R.S. § 8-4-101(14).

159. The Colorado Acts require employers, like Lab Logistics, to pay employees overtime for hours worked in excess of twelve (12) hours in a single workday and for all hours worked in excess of forty (40) hours each workweek. *See* 7 Colo. Code Regs. § 1103-1:4.

160. In violation of the Colorado Acts, Lab Logistics willfully failed to pay Plaintiff Garza-Laureles and the Colorado Class Members overtime compensation due and owing to them as required under the Colorado Acts.

161. Specifically, Lab Logistics failed to pay Plaintiff Garza-Laureles and the Colorado Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek or for all hours worked in excess of twelve (12) hours in a day—as required under the Colorado Acts.

162. In violating the Colorado Acts, Lab Logistics acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Colorado law.

163. As a direct and proximate result of Lab Logistics' willful conduct, Plaintiff Garza-Laureles and the Colorado Class Members have suffered (and continue to suffer) substantial losses and have been deprived of compensation to which they are entitled damages, including liquidated damages and reasonable attorneys' fees pursuant to the Colorado Acts. *See* COLO. REV. STAT. ANN. § 8-4-109(3)(B); § 8-4-110.

164. Lab Logistics is in possession and control of necessary documents and information from which Plaintiff Garza-Laureles would be able to precisely calculate damages.

165. The proposed class of putative class members sought to be certified pursuant to the Colorado Acts is defined in Paragraph 153.

166. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Lab Logistics.

## C. COLORADO CLASS ACTION ALLEGATIONS

167. Plaintiff Garza-Laureles and the Colorado Class Members bring their Colorado Acts claims as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals

employed by Lab Logistics who worked in Colorado at any time since April 13, 2023 through the final disposition of this matter.

168. Class action treatment of Plaintiff Garza-Laureles and the Colorado Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

169. The number of Colorado Class Members is so numerous that joinder of all class members is impracticable.

170. Plaintiff Garza-Laureles's Colorado state-law claims share common questions of law and fact with the claims of the Colorado Class Members.

171. Plaintiff Garza-Laureles is a member of the Colorado Class, her claims are typical of the claims of other Colorado Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Colorado Class Members.

172. Plaintiff Garza-Laureles and her counsel will fairly and adequately represent the Colorado Class Members and their interests.

173. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the Colorado Class should be certified as defined in Paragraph 153.

## VI.
## RELIEF SOUGHT

174. Plaintiffs respectfully pray for judgment against Lab Logistics as follows:

a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 101 and requiring Lab Logistics to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential FLSA Collective Members;

b. For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order pursuant to Section 16(b) of the FLSA finding Lab Logistics liable for unpaid overtime wages due to Plaintiffs (and those FLSA Collective Members who join the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who join the suit);

d. For an Order certifying the Massachusetts Class as defined in Paragraph 132, and designating Plaintiff Youssef as Representative of the Massachusetts Class;

e. For an Order pursuant to the Massachusetts Overtime Statute awarding Plaintiff Youssef and the Massachusetts Class Members unpaid overtime and all other damages allowed by law;

f. For an Order certifying the Colorado Class as defined in Paragraph 153, and designating Plaintiff Garza-Laureles as Representative of the Colorado Class;

g. For an Order pursuant to the Colorado Acts awarding Plaintiff Garza-Laureles and the Colorado Class Members unpaid overtime and all other damages allowed by law;

h. For an Order awarding the costs and expenses of this action;

i. For an Order awarding attorneys' fees;

j. For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

k. For an Order awarding service awards to the Plaintiffs as permitted by law;

l. For an Order compelling the accounting of the books and records of Lab Logistics, at Lab Logistics' own expense, should discovery prove inadequate; and

m. For an Order granting all other proper relief.

## VII. JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Date: June 25, 2026

Respectfully submitted,

**THE PLAINTIFFS, AMIR YOUSSEFF AND GRACE GARZA-LAURELES, individually and on behalf of all others similarly situated**

**HAYBER, MCKENNA & DINSMORE, LLC**

By: */s/ Richard E. Hayber*
**Richard E. Hayber**
BBO #569131
rhayber@hayberlawfirm.com
750 Main Street, Suite 904
Hartford, CT 06103
Tel: (860) 522-8888
Fax: (860) 218-9555

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexander*
**Clif Alexander** (admitted *pro hac vice*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin Anderson** (*pro hac vice anticipated*)
Texas Bar No. 24045189
austin@a2xlaw.com
**Carter T. Hastings** (admitted *pro hac vice*)
Texas Bar No. 24101879
carter@a2xlaw.com
**Lauren E. Braddy** (*pro hac vice pending*)
Texas Bar No. 24071993
Lauren@a2xlaw.com
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiffs and Putative Collective/Class Members***

**CERTIFICATE OF SERVICE**

I, Clif Alexander, hereby certify that this document, filed through the CMECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on June 25, 2026, and to unregistered participants via email.

Dated: June 25, 2026

*/s/ Clif Alexander*
Clif Alexander